IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILBERT RAY HUTSON, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-05-1163 |
| | § | |
| RICK THALER, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND OPINION

Wilbert Ray Hutson filed a petition for a writ of habeas corpus on April 4, 2005. (Docket Entry No. 1). Based on careful consideration of the pleadings, the motion and response, the record, and the applicable law, this court grants the respondent's motion for summary judgment. The reasons are set out below.

## I.    Procedural History and Background

A jury found Hutson guilty of the felony offense of aggravated assault with a deadly weapon, a utility razor knife. (Cause Number 875569). On September 26, 2001, the court sentenced Hutson to a ten-year prison term. The Fourteenth Court of Appeals of Texas affirmed Hutson's conviction on October 10, 2002. *Hutson v. State,* No. 14-01-01097-CR, 2002 WL 31426175 (Tex. App. – Houston [14th Dist.] 2002, pet. ref'd) (not designated for publication). In affirming, the Texas court stated the following:

> Appellant's appointed counsel filed a brief in which he concludes that the appeal is wholly frivolous and without merit. The brief meets the requirements of *Anders v. California,* 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed.2d 493 (1967), presenting a professional evaluation of the record demonstrating why there are no arguable grounds to be

advanced. *See High v. State,* 573 S.W.2d 807 (Tex. Crim. App. 1978).

A copy of counsel's brief was delivered to appellant. Appellant was advised of the right to examine the appellate record and file a pro se brief. Appellant filed a pro se brief on August 26, 2002, raising fourteen alleged errors.

After reviewing the record and briefs, we agree the appeal is wholly frivolous and without merit. Further, we find no reversible error in the record.

Accordingly, the judgment of the trial court is affirmed.

*Hutson v. State,* No. 14-01-01097-CR, 2002 WL 31426175 (Tex. App. – Houston [14th Dist.] 2002, pet. ref'd) (not designated for publication).

On April 2, 2003, the Texas Court of Criminal Appeals refused Hutson's petition for discretionary review. On July 26, 2004, Hutson filed a state application for habeas corpus relief. On February 9, 2005, the Texas Court of Criminal Appeals denied the application without written order, on findings of the trial court, without a hearing. *Ex parte Hutson,* Application No. 56,004-2 at cover.

Hutson subsequently filed a motion for postconviction forensic testing under Chapter 64 of the Texas Code of Criminal Procedure. Hutson sought DNA testing of the box cutter used in the aggravated assault. On April 12, 2004, the trial court held a postconviction DNA hearing and denied Hutson's motion. The trial court adopted the State's proposed findings of fact and conclusions of law, finding, in part, that Hutson failed to show that evidence still existed and was in a condition that made DNA testing possible. The appellate court held that the trial court properly denied Hutson's motion for postconviction DNA testing.

On April 4, 2005, this court received Hutson's federal petition. On May 31, 2005, this court dismissed Hutson's petition for a writ of habeas corpus as time-barred. (Docket Entry No. 14). On November 14, 2007, the United States Court of Appeals for the Fifth Circuit reversed and remanded on the basis that a motion to test DNA evidence under the Texas Code of Criminal Procedure constituted "other collateral review" that tolled the AEDPA's one-year limitations period. (Docket Entry No. 28).

On June 9, 2008, the respondent filed a motion for summary judgment on Hutson's claims that he was denied the right to represent himself and that his court-appointed attorney was ineffective. (Docket Entry No. 36). On January 13, 2009, this court granted the respondent's motion for summary judgment in part and denied it in part. (Docket Entry No. 40). This court dismissed as procedurally barred Hutson's claims based on insufficiency of the evidence and on trial-court error relating to the failure to instruct the jury on self-defense. The remaining claims were retained for further proceedings. A telephonic hearing was held on February 10, 2009 on the remaining claims. (Docket Entry No. 50). The court noted that Hutson had presented the factual bases of his claims in detail and raised claims beyond those presented earlier. (Docket Entry Nos. 1 & 9). Hutson raised claims based on denial of his right to self-representation at trial and on appeal; the denial of his right to present a self-defense argument; the denial of effective assistance of counsel at trial and on appeal; the denial of a fair trial due to trial-court errors; the prosecutor's knowing use of false testimony; the prosecutor's improper closing argument; and the denial of his right to discover exculpatory evidence. (Docket Entry No. 13, p. 16).

This court determined that additional motions and briefs were necessary to evaluate Hutson's claims for federal habeas relief. The respondent filed a supplemental motion for summary judgment,

(Docket Entry No. 52), with a copy of the state court record. Hutson filed a response. (Docket Entry No. 53).

Hutson contends that his conviction is void for the following reasons:

(1)    The trial court erred by:

        (a)    failing to instruct the jury on self-defense;

        (b)    failing to dismiss the court-appointed attorney, who was under investigation by the State Bar Association following Hutson's complaint;

        (c)    failing to investigate Hutson's pretrial written and oral claims of conflict of interest and breakdown in communication;

        (d)    allowing counsel to continue to represent Hutson and not allowing hybrid representation or *pro se* representation;

        (e)    denying Hutson's motion for a pretrial hearing and failing to make a written ruling on all motions;

        (f)    failing to test the alleged weapon for fingerprints, blood, and DNA;

        (g)    allowing the jury to hear the prosecutor and counsel argue the admissibility of evidence;

        (h)    sustaining the prosecutor's objection to counsel's cross-examination of the State's witnesses and withholding writings used to refresh the memory of witnesses;

        (i)    denying the appointment of counsel for forensic testing of evidence and appointing counsel for appeal against Hutson's wishes;

      (j)      denying Hutson's *pro se* motion for forensic DNA testing, and failing to hold the prosecutor in contempt for failure to maintain and produce the evidence; and

      (k)      denying a motion for continuance so that the defense could subpoena favorable witnesses.

(2)     Trial counsel rendered ineffective assistance by:

      (a)      failing to object to the jury charge on the ground that it did not contain an instruction on self-defense;

      (b)      failing to investigate or discover potentially exculpatory evidence;

      (c)      failing to file pretrial motions;

      (d)      failing to subpoena witnesses;

      (e)      failing to examine the evidence;

      (f)      failing to advise Hutson of any affirmative defense to the criminal charges;

      (g)      failing to request the criminal record of the plaintiff or witnesses for the State;

      (h)      failing to show that he reviewed the prosecutor's file;

      (i)      failing to file pretrial motions concerning self-defense;

      (j)      failing to file a motion for discovery or motion to subpoena witnesses;

      (k)      failing to keep Hutson informed of any plea bargain offered by the State.

      (l)      failing to present the results of a private investigation;

      (m)     disclosing confidential information to the prosecutor;

      (n)      failing to object to improper use of peremptory strikes;

      (o)     failure to file a motion to suppress; and

      (p)     failure to object to the sequestration of witnesses.

(3)     Appellate counsel rendered ineffective assistance.

(4)     The prosecutor engaged in misconduct by:

      (a)     making improper closing statements;

      (b)     failing to disclose favorable evidence; and

      (c)     knowingly using perjured testimony.

(5)     The evidence was insufficient to support the conviction.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 7-8; Docket Entry No. 13, Petitioner's

Memorandum, pp. 1-17).

     The grounds for relief are each analyzed below. Many of Hutson's claims are interrelated,

making some repetition in the analysis unavoidable.

## II.   The Applicable Legal Standards

     Hutson's petition is reviewed under the federal habeas statutes, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254; *Woods v.*

*Cockrell*, 307 F.3d 353, 356 (5th Cir. 2002); *Nobles v. Johnson*, 127 F.3d 409, 413 (5th Cir. 1997).

     Sections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of fact,

questions of law, and mixed questions of fact and law that result in an adjudication on the merits.

An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case

is substantive, as opposed to procedural." *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000). A

state-court determination of questions of law and mixed questions of law and fact is reviewed under

28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an

unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). A state-court decision is "contrary to" Supreme Court precedent if (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor,* 120 S. Ct. 1495 (2000). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1495. Questions of fact found by the state court are "presumed to be correct . . . and [receive] deference . . . unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill*, 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

A state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under section 2254(e)(1) unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)). This deference extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules.   Section 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be correct" – overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party.   Unless the petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002).

Hutson is proceeding *pro se*.   A *pro se* habeas petition is construed liberally and not held to the same stringent and rigorous standards as pleadings filed by lawyers.   *See Martin v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh,* 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981).   This court broadly interprets Hutson's state and federal habeas petitions. *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

## III.     Factual Background

The trial transcript and other court records provide the relevant facts.   William Mark Dicks testified that he and Hutson fought on April 4, 2001.   The fight took place at the office of Comvest Financial, a call center that sold telephone service for a local phone company called Total Telephone. (Reporter's Record, Vol. V, p. 12).   Dicks operated Comvest Financial.   Hutson had worked for Dicks.   Hudson's job was making calls to Texas residents and small businesses. (Reporter's Record, Vol. V, p. 14).   Dicks testified that Hutson was a satisfactory employee who got along with his coworkers.   Dicks never had a disagreement with Hutson until April 4.

Dicks testified that after a principal client decided not to continue doing business with the call center and failed to pay, Dicks was forced to lay off all but one of his employees. (*Id.* at 16). Dicks explained to his employees that it would take one or two weeks to pay them all. (*Id.* at 17). Dicks told Hutson that his check for $105 was ready and would be posted on the door, but Hutson failed to pick up his check. After two days, Dicks put the check in the receptionist's area.

Dicks testified that when he came back from lunch on April 4, he saw Hutson at the call center. Hutson was going through a desk. (*Id.* at 40). Dicks told Hutson to stop and to leave. Dicks went toward the receptionist's area to retrieve Hutson's check. According to Dicks, Hutson came up behind him and hit him in the head. Dicks turned and felt a sharp pain in his neck. To stop Hutson, Dicks threw him against the wall. Dicks then felt a pain in his side. (*Id.* at 22). Dicks saw a utility knife fall to the floor when he threw Hutson against the wall. Dicks identified State's Exhibit 1 as that knife.

Hutson got up and came toward Dicks again. Dicks threw Hutson over the top of a desk. Hutson then went to the other side of the desk, grabbed a pair of scissors, and threatened Dicks. Hutson chased Dicks around the desk in an effort to stab him with the scissors, then picked up a chair and threw it at Dicks. Dicks yelled for an employee to call the police. (*Id.* at 23). Dicks recalled that three or four employees, including Dan Nauert and Don Black, were present. Carmen Hendrex, the office manager, was not in the room but was "around." (*Id.* at 23).

Dicks testified that the building manager, Linda Lively, was outside the office and calling to him. Dicks warned her not to come in because Hutson had a knife. Dicks told her to call the police. (*Id.* at 25). When Hutson went back to the back calling room, Dicks went outside where Linda Lively and the security guard were. Dicks stated that he was in fear for his life during the

fight. (*Id.* at 26). Dicks identified State's Exhibits 2 through 8 as photographs of the reception area after the attack and photographs of cuts on Dicks's side, leg, and neck. (*Id.* at 27).

On cross-examination, defense counsel asked Dicks if he had reviewed any reports or statements that he had made before testifying. Dicks stated that he had reviewed notes that the prosecutor, John Jocher, took during his interview with Dicks. The prosecutor then explained that Dicks did not review his notes. Instead, the prosecutor had reviewed the notes and asked Dicks questions about whether certain events had happened. (*Id.* at 31). The court overruled defense counsel's objection to the failure to provide the notes. (*Id.* at 34). Defense counsel also questioned Dicks about when he first saw the utility knife, his actions toward Hutson, whether the police responded, who was present when Dicks returned from lunch, whether it was possible that the utility knife had been dislodged from a place in the office during the fight, when Dicks discovered his injuries, and whether Hutson had cut Dicks with the scissors.

Don Black, a witness to the fight, also testified. (Reporter's Record, Vol. V, p. 56). Black had worked for Dicks. Black was sitting at a desk in the larger telemarketing room making phone calls on April 4 when he saw Hutson come into the telemarketing room and go to a desk against the wall next to the window. Black asked what Hutson was doing. Hutson replied that he was there to get his money. Hutson said that he would either get his money or "he would take it in f---ing blood." Black thought Hutson was joking. Dicks came into the room, asked Hutson what he was doing rifling through the desk, and said that he was not allowed to be there. Dicks and Hutson argued, and Dicks said that he would call the police. As Hutson walked down the hallway, Black saw him pull something out of his pocket. Black believed that Hutson was pulling out a gun. (*Id.* at 62). Hutson

walked by Black towards Dicks. Black saw Hutson had a utility razor knife in his right hand. Black identified State's Exhibit No. 1 as the knife Hutson had pulled from his coat pocket.

Black heard a lot of noise, consistent with a fight. He heard someone yell to call the police. Black went down the hallway and saw Hutson and Dicks fighting. Black thought Hutson was about to attack Dicks and saw Dicks throw Hutson off. (*Id.* at 64). Black left the office.

On cross-examination, defense counsel asked Black if he reviewed any notes before testifying, about the fight, whether Black saw Hutson holding anything when he left the call room, when he saw the utility knife, whether he was certain that the knife he identified was the one in Hutson's hand, who was present during the fight, and whether anyone was present when Hutson came into the call room.

Another eyewitness, Daniel Nauert, testified that he was employed as an energy consultant for Comvest Financial. (Reporter's Record, Vol. IV, p. 76). On April 4, he was in the reception area when Hutson came into the office. Nauert was in another part of the office suite when Dicks had a discussion in the call room with Hutson. (*Id.* at 77). Nauert saw Hutson approach Dicks from behind and hit him in the back of the head and then in the side. (*Id.* at 78). Nauert was two or three feet away when the attack took place. Dicks told Nauert to call the police. Nauert testified that Hutson said he would "f---ing kill me." Nauert went to the back room and called the police.

On cross-examination, defense counsel asked Nauert about his duties at Comvest Financial, whether he knew why Hutson came to the office on April 4, when he first saw Hutson, whether he had a clear view down the hallway to the call room from the reception area, whether he ever saw anyone with injuries, whether he saw Hutson and Dicks dodging around the desk, when he first saw the box cutter, and where the fight took place.

M.J. Mungovan, a police officer for the City of Houston, testified that on April 4, 2001, he responded to a disturbance call at 7447 Harwin Drive. He took witness statements and called an additional unit to take photographs. That unit did not recover any fingerprints. He identified State's Exhibit No. 1, a utility razor knife, or box cutter, as evidence gathered at the scene. He testified that State's Exhibit No. 1 was a deadly weapon. (Reporter's Record, Vol. V, p. 90).

On cross-examination, defense counsel asked Mungovan whether the box cutter had been tested for fingerprints, whether he had reviewed the report he prepared before testifying, and whether Dicks had told him that Hutson had hit him on the head.

Counsel also called Mungovan as part of the defense case. Mungovan testified that he prepared the offense report based on Dicks's account of events. Dicks testified that when he gave his statement to the police, he was dazed.

Hutson testified in the defense case. In the spring of 2001, he worked for Comvest Resources selling electricity and natural gas, not telephone service. (*Id.* at 114). Dicks owned the company and was responsible for paying the employees. Hutson testified that the checks he received from Comvest routinely bounced. Hutson testified that one day, Dicks came to the office and said that the company was closed. Dicks did not pay Hutson. Frustrated, Hutson went to the District Attorney's Office and filed a complaint. On March 23, 2001, Dicks told Hutson to come to the office and pick up his check. Hutson went to the office, but it was closed. Another employee, Rendwick Ward, told Hutson that Dicks had paid him. On April 4, Hutson returned to Comvest to get his money. He saw Carmen, the office manager, and Rendwick Ward. Hutson went upstairs to his desk in the call room to clear out his belongings. (*Id.* at 118). When Hutson was going through the desk, Don Black and Rendwick Ward were in the call room. After collecting his personal

property, Hutson got a cup of coffee and waited for Dicks to come back from lunch. When Dicks returned, he told Hutson to leave or he would call the police. Hutson got up from his desk and collected some papers that showed the amount of money Dicks owed him. Dicks was facing the other way, so Hutson reached up and pushed the papers around Dicks's shoulder. Dicks turned around and punched Hutson in the face, knocking his glasses off. The men struggled. Dicks, who was bigger, threw Hutson on the desk, breaking a computer. Dicks picked up the computer and tried to hit Hutson on the head with it. Dicks then ran to the opposite side of the desk and grabbed a cup holder that contained a letter opener and scissors. Hutson grabbed the cup from Dicks. Hutson then picked up the scissors and backed away from the desk. Hutson denied holding the scissors in a threatening manner. Instead, he testified that he was keeping them away from Dicks. Dicks threw a staple remover at Hutson's head but missed.

Hutson testified that he thought Dicks had lost his mind. "I wasn't threatening to kill him. I wasn't trying to cut him. I wasn't trying to hurt him. I just want my money, that's all. Why didn't he just give me the check and let me go home?" (*Id.* at 122). Dicks told Black to call the police. Hutson told Black, "Go before I kick your ass." Dicks pushed past Hutson and went out the door. (*Id.* at 123). Hutson went into the back room, picked up his briefcase, put his papers in the briefcase, and left. As he walked out of the office, he saw Dicks talking to a woman. They were screaming that Hutson had a knife and was trying to kill Dicks. Hutson was holding a cup of cold coffee, which he threw on Dicks. (*Id.* at 124). Hutson walked outside, caught a bus, and went to where he was working at the police patrol union. He reported the incident to the District Attorney the following day. Hutson denied ever handling a box cutter. He saw the box cutter on the floor or on a desk, but

did not pick it up.  He denied cutting Dicks.  (*Id.* at 134-35).  Hutson admitted that he had a physical confrontation with Dicks but said he only wanted to recover his money.

On cross-examination, the prosecutor asked Hutson if he had any records showing that he was employed by police patrol union number 2, whether he had the checks from Comvest that had been returned for insufficient funds, whether he had previously been convicted of felony possession of a controlled substance, who at the District Attorney's Office he talked to about the fight, whether he thought that Black and Nauert had lied about the events on April 4, whether he had left the Comvest office before the police arrived, and why he had continued to work for Comvest even after he was not getting paid.

On rebuttal, the State called Linda Lively, the building manager at 7447 Harwin.  She was in an adjacent suite to the Comvest office when she heard furniture crashing.  She thought that there was some kind of fight taking place in the Comvest suite.  (*Id.* at 137).  Lively went to the suite and announced her presence.  Dicks screamed, "Don't come in here.  He has a knife!"  She flung open the door and urged Dicks to get out.  When Dicks emerged from the office, he appeared very shaken, his clothes were disheveled, and he had a cut on his neck.  At the time, Lively did not see Hutson. While Lively was calling the police, Hutson suddenly entered the suite, threw coffee on Dicks, and screamed, "I'll be back!"

The jury convicted Hutson of aggravated assault with a deadly weapon.  After unsuccessful appeals and state habeas proceedings, Hutson filed this federal petition.

## IV.    The Claim Based on Sufficiency of the Evidence

Hutson challenges the sufficiency of the evidence to support his conviction.[1]  Hutson argues that there was no evidence that he intentionally threatened Dicks by using and exhibiting a deadly weapon; that the utility knife was not "per se" a deadly weapon; that the prosecutor did not prove the utility knife was a deadly weapon; and that there was no evidence that he acted with the necessary culpability.  Hutson raised this claim in his *pro se* appellate brief.  It appears that the state appellate court considered and rejected this claim on the merits.

To review the legal sufficiency of the evidence, a federal court must consider whether, viewing all the evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318-19 (1979).  Credibility choices and conflicting inferences are to be resolved in favor of the factfinder. *United States v. Cyprian,* 197 F.3d 736, 740 (5th Cir. 1999), *cert. denied,* 531 U.S. 822 (2000).  To determine whether the evidence is constitutionally sufficient to support the conviction, a court must examine whether the evidence satisfied the "substantive elements of the criminal offense as defined by state law." *Brown v.*

---

[1]  The respondent asserts that Hutson did not exhaust state court remedies as to several claims and they are procedurally defaulted.  (Docket Entry No. 52, Respondent's Motion for Summary Judgment, pp. 28-29).  Under the AEDPA, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "This longstanding exhaustion requirement is not jurisdictional, but 'reflects a policy of federal-state comity . . . designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *Anderson v. Johnson,* 338 F.3d 382, 386 (5th Cir. 2003) (quoting *Wilder,* 274 F.3d at 260).

Even if there is a failure to exhaust, a court may proceed to the merits and deny the claims. *Manns v. Quarterman*  236 Fed. Appx. 908, 911, 2007 WL 1598811, 3 (5th Cir. 2007) (citing 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")).  Hutson's claims are analyzed on the merits.

*Collins,* 937 F.2d 175, 181 (5th Cir. 1991) (quoting *Jackson,* 443 U.S. at 324 n.16). The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt. A reasonable trier of fact must be able to find that the evidence, whether direct or circumstantial, and all reasonable inferences, established guilt beyond a reasonable doubt. *United States v. Salazar,* 958 F.2d 1285, 1294 (5th Cir.), *cert. denied,* 506 U.S. 863 (1992).

The indictment against Hutson stated:

> in Harris County, Texas, Wilbert Ray Hutson, hereafter styled the Defendant, heretofore on or about April 4, 2001, did then and there unlawfully, intentionally and knowingly threaten William Dicks with imminent bodily injury by using and exhibiting a deadly weapon, namely, a knife. It is further presented that in Harris County, Texas, Wilbert Ray Hutson, hereafter styled the Defendant, heretofore on or about April 4, 2001, did then and there unlawfully intentionally and knowingly cause bodily injury to William Dicks by using a deadly weapon, namely a knife.

(Clerk's Record, Vol. I, p. 5).

Under Texas law, a person commits the offense of assault if he:

> (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

> (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or

> (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

TEX. PEN. CODE ANN. § 22.01 (Vernon 2001). Assault is generally a misdemeanor offense. The felony offense of aggravated assault occurs when a serious bodily injury is inflicted or when a deadly weapon is used or exhibited. § 22.02.

Hutson argues the evidence presented was legally insufficient to sustain a felony conviction for aggravated assault.  Hutson first argues that there is no evidence that the utility razor knife he allegedly used in threatening Dicks was a deadly weapon.  Under the Texas Penal Code, a "deadly weapon" includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."  TEX. PEN. CODE ANN. § 1.07(a)(17)(B) (Vernon 2001).  When a knife is not alleged to have caused actual injury, the State must show the knife was capable of causing death or serious bodily injury by showing the manner of its use, the size of the blade, the threats made by the accused, the physical proximity between the accused and the victim, the appearance of sharpness, any brandishing motions, or the victim's fear of serious bodily injury or death.  *Soto v. State,* 864 S.W.2d 687, 691 (Tex. App. - Houston [14th Dist.] 1993, pet. ref'd) (citing *Blain v. State* 647 S.W.2d 293, 294) (Tex. Crim. App. 1983) (en banc)).

The evidence at trial showed that Dicks was cut on the neck, side of his chest, and on his leg.  The prosecutor introduced State's Exhibit No. 1 as the utility knife Hutson allegedly used to stab Dicks.  The prosecutor also introduced photographs of the cuts Dicks sustained in his fight with Hutson.  The State introduced testimony about the size and appearance of the razor blade in the knife, the motions Hutson made, and the physical proximity between Hutson and Dicks.  Black testified that he saw Hutson pull the utility knife from his pocket as he approached Dicks.  Dicks testified that he felt a pain in his neck and side as he fought with Hutson and saw the utility knife fall to the floor when he threw Hutson against the wall.  Officer Mungovan testified that the utility knife was a deadly weapon.

A rational jury could have found all the elements of aggravated assault, beyond a reasonable doubt.  The record discloses legally and factually sufficient evidence that Hutson used a knife that

P:\CASES\prisoner-habeas\2005\05-1163.k04.wpd

17

was capable of causing death or serious bodily injury to Dicks.  The jury saw the knife and heard

testimony about how Hutson used it and the result.  The evidence was sufficient to support Hutson's

conviction for aggravated assault.  Hutson is not entitled to habeas relief on his sufficiency of the

evidence claim.  *See Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993), *cert. denied*, 510 U.S.

1141 (1994).

## V.      The Claim Based on a Denial of the Right to Self-Representation

The Sixth Amendment grants defendants the constitutional right to represent themselves in

federal court.  *Faretta v. California*, 422 U.S. 806, 812-21 (1975).  The right to self-representation

is contingent on the defendant's knowing and intelligent waiver of the right to be represented by

counsel.  *See id.* at 835.  The standard of competency for waiving the right to counsel is the same as

the standard for determining whether a defendant is competent to stand trial.  *Godinez v. Moran*, 509

U.S. 389, 399-402 (1993).  A court may terminate the right to self-representation if the defendant

fails to abide by courtroom rules or engages in obstructionist conduct.  *Id.* at 834 & n.46.  A trial

court may appoint stand-by counsel to assist the defendant (even over the defendant's objection), so

long as stand-by counsel does not unduly impinge on the defendant's self-representation.  *Id.* at 834

n.46.

A defendant's request to proceed *pro se* must be clear and unequivocal.  *United States v.

Majors*, 328 F.3d 791, 794 (5th Cir. 2003).  First, the defendant must unequivocally inform the court

of his desire to represent himself.  Second, "the court must conduct a *Faretta* hearing to determine

whether the defendant is 'knowingly and intelligently' forgoing his right to appointed counsel and

whether, by post-invocation action, he has waived the request [to proceed *pro se*]."  *United States

v. Cano*, 519 F.3d 512, 516 (5th Cir. 2008).  "Where a fundamental constitutional right, such as the

right to counsel, is concerned, courts indulge every reasonable presumption against waiver." *Burton v. Collins*, 937 F.2d 131, 133 (5th Cir. 1991), *cert. denied*, 502 U.S. 1006 (1991). When a defendant, unskilled in the law, does not make a clear election to forego counsel, a court should not infer that the defendant has opted to take his own defense. *Id.* The right of self-representation does not attach until it is asserted. *See Collier v. Cockrell*, 300 F.3d 577, 586 (5th Cir. 2002).

A trial court need not permit a defendant to proceed *pro se* if the motion to do so is untimely. *Wood v. Quarterman*, 491 F.3d 196 (5th Cir. 2007) (citing *Martinez v. Court of Appeal*, 528 U.S. 152, 162 (2000) (noting that "most courts" require defendant to assert right to self-representation "in a timely manner")). An accused may not wait until the day of trial to demand different counsel or to request that counsel be dismissed. *Id.* at 320. The Fifth Circuit has held that "although a defendant does indeed have the right to defend himself without counsel at his trial, once the trial begins, the right to defend ceases to be absolute . . . [t]hus a defendant cannot wait until the eve of trial to exercise his right to proceed *pro se* for courts are wary of last minute requests which 'impede the prompt and efficient administration of justice.'" *United States v. Wagner*, 158 F.3d 901, 902 (5th Cir. 1998) (quoting *McQueen v. Blackburn*, 755 F.2d 1174, 1178 (5th Cir. 1985)).

There is no right to hybrid representation. *See United States v. Daniels*, 572 F.2d 535, 540 (5th Cir. 1978); *Landers v. State*, 550 S.W.2d 272, 280 (Tex. Crim. App. 1977). Defendants represented by counsel may not submit *pro se* filings. *See Neal v. Texas*, 870 F.2d 312, 315-316 (5th Cir. 1989); *Satterwhite v. Lynaugh*, 886 F.2d 90, 93 (5th Cir. 1989); *Rudd v. State*, 616 S.W.2d 623, 625 (Tex. Crim. App. 1981).

A.       **The Right to Self-Representation at Trial**

The record shows that Houston Police Officer M. E. Doyle filed a complaint against Hutson on April 25, 2001. (Clerk's Record, Vol. I, p. 2).  On May 4, 2001, the trial court appointed John Denninger to represent Hutson.  (*Id.* at 4).  A Harris County grand jury indicted Hutson for felony aggravated assault on May 23, 2001.  (*Id.* at 5).  Denninger filed pretrial motions on June 8, 2001, seeking funds for an investigator and requesting notice of the State's intent to offer evidence of extraneous offenses.  (*Id.* at 8, 9).

Hutson filed the following *pro se* pretrial motions:

(1)     June 18, 2001, motion for discovery.  (*Id.* at 10).

(2)     June 18, 2001, motion for hybrid representation.  (*Id.* at 17).

(3)     July 11, 2001, motion for an investigator.  (*Id.* at 22).

(4)     July 11, 2001, motion to dismiss trial counsel and appoint new counsel.  (*Id.* at  25).

(5)     July 12, 2001, second motion to dismiss trial counsel and appoint new counsel.  (*Id.* at 29).

(6)     July 12, 2001, motion in limine.  (*Id.* at 31).

(7)     July 12, 2001, motion to set aside the indictment.  (*Id.* at 35).

(8)     July 12, 2001, motion for the court to make written findings on all its rulings.  (*Id.* at 38).

(9)     July 23, 2001, motion for an evidence [sic] hearing.  (*Id.* at 43).

(10)   July 25, 2001, motion for a speedy trial.  (*Id.* at 49).

(11)   July 25, 2001, motion to reduce bail.  (*Id.* at 52).

(12)   July 25, 2001, petition for writ of habeas corpus for bond reduction.  (*Id.* at 55).

(13)    July 31, 2001, motion for pretrial hearing. (*Id.* at 59).

(14)    August 16, 2001, motion to reduce state jail felony to a misdemeanor. (*Id.* at 65).

On August 21, 2001, the day before the trial was scheduled to begin, the court conducted a

pretrial hearing.  Hutson requested hybrid representation.  The following exchange occurred:

> THE COURT:  I'm not going to allow hybrid representation.  Under the law, you have a right to either represent yourself, to hire your own lawyer, or if you are indigent and cannot afford counsel, then you get an appointed lawyer, which I believe is your situation in this case.  You do have a constitutional right to represent yourself, but that's another issue to explore.  Do you understand your rights in regards to an attorney?
>
> THE DEFENDANT:  I understand these rights.  I also know at this point we are unprepared to go to trial.  Therefore, under my attorney, if I have to have him as an attorney to go to trial tomorrow, I will ask for a continuance and ask the Court to dismiss my court-appointed attorney and allow me to hire an attorney.
>
> THE COURT:  The case has been set for trial for some time.  The State announced ready and your lawyer has announced ready.  We are going to trial to[sic] tomorrow.  Looking at the file, I see that sometime back in June I signed a Motion for Authorization of Funds for Investigation and for investigator fees.  Mr. Denninger has worked a lot in this Court.  I've known him for many years.  He is extremely competent in trial.  If he tells me he's ready to go to trial, he is ready to go to trial.  Therefore, I intend to try the case.
>
> THE DEFENDANT:  You can try the case with Mr. Denninger or I'll have to fire him.
>
> THE COURT:  You have a right as far as an appointed lawyer.  You do not have the right to choose your own appointed lawyer.  That's my job.  I've done that.  Your only other option is to hire a lawyer who's ready to go to trial or represent yourself.  These are you choices.  Do you understand your choices?
>
> THE DEFENDANT:  I can't have 30 days recess to hire an attorney?
>
> THE COURT:  No, sir.

(Reporter's Record, Vol. II, pp. 9-11).

On August 24, 2001, the trial was continued until September 24, 2001. (Clerk's Record, Vol. I, p. 98). On September 24, the case was continued until September 25. (*Id.* at 98). At a pretrial hearing on September 25, Hutson raised – for the first time – the issue of self-representation.

At the hearing, the trial court advised Hutson of his right to be tried in civilian clothes. After the trial court told Hutson that he could retrieve his clothes from the property room, Hutson asked to represent himself. The following exchange took place:

> [THE DEFENDANT]: The State of Texas has advocated an action against Mr. Denninger at my request. It would not be in the best interest for Mr. Denninger to be continuing in this cause. Please relieve Mr. Denninger of any further responsibilities in this case and cause. Mr. Denninger has failed to make any affirmative action in this case. And what I would like to do is the Defense would request to continue pro se. I have filed several motions with the district clerk's office as the attorney of record. I simply ask that we have a preliminary hearing and that we get a ruling on the motion and a written ruling on our motions.
>
> THE COURT: Request is denied. Now I'm going to send you down to put your clothes on.
>
> THE DEFENDANT: We can go down but I'm not going to trial.
>
> THE COURT: Yes, you are, sir.
>
> THE DEFENDANT: At this point – I would ask for an appeal at this point.
>
> THE COURT: There's nothing to appeal. At the conclusion of your case, you're going to be either found not guilty, nothing to appeal, or you may be found guilty and you can request an appeal by law. Now, are you going to put your clothes on?
>
> THE DEFENDANT: Am I going to put my clothes on? I am. I ask that I be present during jury selection.

> THE COURT:  You're going to be present during jury selection. You're going to go down and put your clothes on, and then we're going to start jury selection.  We're not going to do anything without you.

(Reporter's Record, Vol. III, pp. 5-7).

The court appointed Denninger to represent Hutson on May 4.  On August 21, the day set for trial to begin, Hutson told the court that he and his attorney were not prepared to go to trial.  Hutson said that he wanted to dismiss his counsel and hire a new attorney and asked if that would entitle him to a thirty-day continuance.  The court told Hutson that the trial date would not be postponed.  The record shows that Hutson sought to fire his court-appointed attorney to delay the trial date.  The trial was continued until September 24.  At that time, right before jury selection, Hutson asked to represent himself.  The trial court's refusal was not a violation of Hutson's Sixth Amendment rights.

The right to proceed *pro se* at trial is not absolute.  *United States v. Wagner*, 158 F.3d 901, 902 (5th Cir. 1998).  The record shows that Hutson waited until the day of trial to exercise this right. *See id.; Wagner*, 158 F.3d at 902.  To grant Hutson's last minute *pro se* motion would "obstruct the orderly procedure in the courts" and would have "interfere[d] with the fair administration of justice." *See Martinez*, 640 S.W.2d at 320; *Wagner*, 158 F.3d at 902.  Hutson is not entitled to federal habeas corpus relief on this claim.

## B.     The Right to Self-Representation on Appeal

After the trial court sentenced Hutson, he asked that he be allowed to represent himself on appeal. (Reporter's Record, Vol. VI, pp. 16-17).  On September 28, 2001, the trial court conducted a hearing to address the request. (Reporter's Record, Vol. VII, p. 5).  The trial court gave Hutson a detailed explanation of the appellate process.  Hutson reiterated his request to be the attorney of

record on appeal. When asked if he had any legal training, Hutson said he had been in the criminal

justice system for thirty years. Hutson stated that he had a Bachelor of Arts in computer technology

and other certifications from Houston Community College. He stated that he was fifty-one years old

and had been employed in telephone sales. He stated that he had defended two misdemeanor cases

*pro se.* He denied any mental illness. The court strongly urged Hutson to allow the appointment of

appellate counsel. The court advised Hutson that he would be required to adhere to all appellate

rules. The court then granted Hutson's request to proceed *pro se* on appeal, stating:

> it appears to me that you are aware of the risks, the downfalls, and
> that you are probably -- you know, going to mess this up. I don't
> know.
> . . .
>
> All right. As long as you understand. I'm going to have you sign a
> waiver.
>
> I'm going to make a finding that you intelligently, knowingly, and
> voluntarily waived your constitutional right that you have to have a
> lawyer to represent you in your appeal. If you choose to proceed this
> way, then that's your choice. So you have to understand that after
> you sign that waiver, and you leave here today, I'm not going to see
> you again. . . .

(Reporter's Record, Vol. VII, p. 13). Hutson executed a written waiver of appellate counsel.

(Clerk's Record, Vol. I, p. 96).

Hutson later wrote to the trial court asking for legal assistance on his appeal. A hearing was

held on this request on February 12, 2002. Hutson told the court that he was "requesting DNA

testing on the weapon" and that he needed "an attorney to help me with this DNA stuff . . . to see

what it is and how it can be used in my behalf." (Reporter's Record, Vol. IX, pp. 4, 5). When the

court asked whether he wanted a lawyer, Hutson responded, "Not the appeal, just the DNA forensic testing." (*Id.* at 5).   The following exchange then took place:

> THE COURT:   Do you want to continue to represent yourself on the appeal?
>
> THE DEFENDANT:   On the appeal.
>
> THE COURT:   Even if you don't own an ink pen?
>
> THE DEFENDANT:   I don't have a choice at this time.
>
> THE COURT:   Sir, I'm trying to help you.  So don't get smart with me.  I'm trying to help you.  You're telling me you want to continue to represent yourself on appeal but you're telling me you don't even have an ink pen.  I'm concerned about that.  I'm trying to help you.  I'm asking you do you want to represent yourself on appeal.  We've been through this many times.  I can't give you an ink pen but I can give you a lawyer.
>
> THE DEFENDANT:   Your Honor –
>
> THE COURT:   Yes.
>
> THE DEFENDANT:   The point is, in the event I get an attorney to have DNA and forensic testing, would this deny me my right to appeal?  Am I waiving my right to appeal to have DNA testing.
>
> THE COURT:   I'm not going to give you any legal advise [sic], sir.  You need a lawyer.  I'm doing my best to the [sic] give you a lawyer.
>
> THE DEFENDANT:   Okay.  Set a lawyer.
>
> THE COURT:   You want a lawyer.
>
> THE DEFENDANT:   Yes.
>
> THE COURT:   All right.  I'm going to appoint a lawyer to represent you.

(Reporter's Record, Vol. IX, pp. 6-7).

The trial court appointed Ted Doebbler to represent Hutson on appeal.  (Supplemental Clerk's Record, Vol. I, p. 1).  Appointed appellate counsel filed an *Anders* brief.  On June 27, 2002, the Texas court of appeals issued an order allowing Hutson to file a *pro se* brief.  Hutson did so.  On October 10, 2002, the court of appeals issued an opinion affirming the conviction and finding that "the appeal is wholly frivolous and without merit."  Hutson filed a *pro se* petition for discretionary review, which the Texas Court of Criminal Appeals refused on April 2, 2003.

The record shows that after the trial court granted Hutson's request for self-representation on appeal, Hutson abandoned that right at the hearing held in February 2002, when Hutson sought hybrid representation.  While an accused in a criminal matter may conduct his case *pro se* or by counsel, he has no right to such hybrid representation.  *See Neal v. State*, 870 F.2d 312, 315-16 (5th Cir. 1989); *Rudd v. State*, 616 S.W.2d 623, 625 (Tex. Crim. App. 1981).  The trial court refused this request.  Hutson then asked for a lawyer to be appointed.  That request was granted.  "In absence of a clear indication by the defendant of his desire to waive his fundamental constitutional right to counsel, we are unwilling to infer from an ambiguous record that such a waiver existed."  *Burton v. Collins*, 937 F.2d at 133 (citations omitted).  The record shows no clear and unequivocal assertion of the right to continued self-representation on appeal.  Hutson is not entitled to federal habeas corpus relief on this claim.

## VI.    The Claims Based on Prosecutorial Misconduct

### A.    The Claim of Improper Closing Argument

Hutson alleges that prosecutorial misconduct during closing argument deprived him of a fair trial.  A prosecutor's comment to a jury is reversible error only if it is both inappropriate and harmful.  *United States v. Lowenberg,* 853 F.2d 295, 301 (5th Cir. 1988), *cert. denied,* 489 U.S. 1032

(1989); *see United States v. Young*, 470 U.S. 1, 16 (1985). When a contemporaneous objection is made, the issue is whether the defendant's substantial rights have been prejudiced. *United States v. Fierro*, 38 F.3d 761, 771 (5th Cir. 1994), *cert. denied*, 115 S. Ct. 1388 (1995), and *cert. denied*, 115 S. Ct. 1431 (1995). "[T]he remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." *Young*, 470 U.S. at 12. "Counsel is accorded wide latitude during closing argument, and this court gives deference to a district court's determination regarding whether those arguments are prejudicial and/or inflammatory." *United States v. Palmer*, 37 F.3d 1080, 1085 (5th Cir. 1994), *cert. denied*, 115 S. Ct. 1804 (1995). Three factors are considered to determine whether there is serious doubt about the correctness of the jury's verdict: "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction."

During closing argument, the prosecutor quoted Hutson as saying, "I'm dealing in f— ing blood, not money." Hutson denies ever making this statement. The record shows that Hutson and Dicks argued and fought. An eyewitness, Daniel Nauert, testified that Hutson "said he'd f---ing kill me" if he called the police. (Reporter's Record, Vol. V, p. 79). Black testified that Hutson said he would either get his money or he would take it out in blood. Black testified that at first he thought Hutson was joking when he made this statement.

The prosecutor argued as follows:

> If you look at the testimony as a whole, and we try to put this in perspective and time frame, you had Don Black back in the call room, speaking to the Defendant. First, the Defendant saying, I'm dealing in f[—]ing blood, not money. Next, Don Black sees the Defendant pull the box cutter from his pocket. Next, you hear Mr. Dicks say, I

was attacked from behind. He has a wound on his neck. That wound, the defense attorney wants you to believe, is not consistent with a box cutter. Well, I say it is. It's a puncture wound. And am I to be disappointed that I don't have horrific wounds that we know that a box cutter can inflict on somebody? Or will we punish for the wounds that the box cutter did inflict and be thankful they weren't worse? We have Mr. Dicks telling you that he fought the Defendant off. That's the logical place to assume that the wounds to his torso occurred. We have Daniel Nowert say that he saw the Defendant run up from behind the Defendant and attack him. You saw the disarray that the office was left in. Next, you heard Ms. Lively. You heard Mr. Dicks say he had warned Ms. Lively not to come into the office because the Defendant had a knife. He's warning a woman, don't put yourself in danger. But the Defendant would have you believe he's the one who was being attacked. Ms. Lively, who doesn't even know the Defendant, came in here and testified that she heard Mr. Dicks warning, "Don't come in here." She's the one who threw the door open so that Mr. Dicks could get out of the office and get to safety. And she said she saw the Defendant flee the scene.

. . .

For that reason, we would ask you to return a verdict of aggravated assault.

(Supplemental Reporter's Record, Vol. I, pp. 20-22).

There are four permissible areas of jury argument: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) an answer to the argument of opposing counsel, and (4) a plea for law enforcement. *Campbell v. State*, 610 S.W.2d 754, 756 (Tex. Crim. App. 1980). The record shows that the prosecutor's comment was part of his summation of the evidence at trial. This is one of the four permissible areas of jury argument. Even if the specific statement was improper, it did not "cast serious doubt on the correctness of the jury's verdict" or affect Hutson's substantial rights. *Virgen-Moreno*, 265 F.3d at 290. The trial court instructed the jury that it should base its decision solely on the evidence admitted in the case. (Reporter's Record, Vol. IV, p. 14).

The State presented substantial evidence of Hutson's guilt. Hutson is not entitled to habeas relief on this claim.

### B.   The Claim of Failure to Disclose Exculpatory Evidence

Hutson claims that the prosecutor withheld favorable evidence. During his closing argument, the prosecutor quoted Hutson as saying, "I'm dealing in f—ing blood, not money." Hutson denies ever making this statement. Hutson argues that an eyewitness, Rendwick Ward, would have testified that this statement never occurred. Ward would also have testified that Black left the office before Dicks and Nauert returned from lunch. Hutson argues that the prosecutor did not subpoena Ward because his testimony would have been favorable to the defense.

Under *Brady v. Maryland,* 373 U.S. 83 (1963), suppression by the prosecution of material evidence favorable to the accused, violates the accused's Fourteenth Amendment rights. A criminal defendant may establish a *Brady* violation, affecting his constitutional right to due process, by showing that the prosecution suppressed favorable evidence, including impeachment evidence, material to determining guilt or innocence. *Jackson v. Johnson,* 194 F.3d 641, 648-49 (5th Cir. 1999). "The State's good or bad faith" in depriving the defendant of exculpatory evidence "is irrelevant." *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997) (citing *United States v. Agurs,* 427 U.S. 97, 110 (1976)). The reviewing court must assess "the cumulative effect" of the nondisclosure. *Hughes*, 191 F.3d at 629 (citing *Kyles v. Whitley*, 514 U.S. 419, 436 (1995)). There are three elements to a *Brady* claim: (1) the evidence must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be "material," *i.e.*, prejudice must have ensued from its non-disclosure. *Banks v. Dretke*, 540 U.S. at 691. Evidence is "material" under

*Brady* if there exists a "reasonable probability" that had the evidence been disclosed, the result at trial would have been different. *Banks v. Dretke*, 540 U.S. at 698.

Hutson presents no basis to support an inference that exculpatory material evidence was withheld. Moreover, it is clear that Hutson knew about Ward and what his testimony would be. Evidence is not suppressed if, as here, the defense knew the facts of the asserted exculpatory evidence. The state court's decision to deny relief was not contrary to clearly established federal law, as determined by the Supreme Court of the United States. Hutson's claim for habeas relief based on a *Brady* violation lacks merit. 28 U.S.C. § 2254(d)(1).

### C.     The Claim of Failure to Correct False Testimony

Hutson argues that the prosecution witnesses gave false testimony and that the prosecutor knew it was false. Hutson asserts that Donald Black perjured himself, to obtain free office space in the Comvest office suite, when he testified that Hutson said he would either get his money or he would take it out in blood. Hutson asserts that he in fact said "if I don't see some green today I'll be seeing some red tomorrow." Hutson described this as an accounting term meaning that he had no money. Hutson also asserts that Nauert's testimony that Hutson pulled out a utility knife was false. Hutson asserts that Nauert was in a different room and saw nothing.

Hutson must prove that the prosecution knowingly presented false testimony. *Napue v. Illinois,* 360 U.S. 264 (1959). Mere inconsistencies or errors in a witness's testimony do not, standing alone, establish perjury. *Koch v. Puckett,* 907 F.2d 524, 531 (5th Cir. 1990). Hutson's conclusory assertions that this testimony was false are insufficient to show that the State knowingly presented false material testimony. *See United States v. Leahy,* 82 F.3d 624, 632 (5th Cir. 1996); *United States v. Washington,* 44 F.3d 1271, 1282 (5th Cir. 1995). Nothing in the record supports

Hutson's arguments that the testimony of Black or Nauert was false or that the prosecutor knew their testimony to be false in any respect. *See Napue v. Illinois*, 360 U.S. 264, 271 (1959).

Hutson raised this claim in his *pro se* appellate brief. The Fourteenth Court of Appeals rejected it and affirmed the conviction. The Texas Court of Criminal Appeals refused the petition for discretionary review. The state court's decision reasonably applied the law to the facts, consistent with clearly established federal law. Hutson is not entitled to habeas corpus relief on this claim. 28 U.S.C. § 2254(d)(1).

## VII.    The Ineffective Assistance of Trial Counsel Claims

To establish an ineffective assistance of counsel claim, a petitioner must show that his counsel's performance was deficient and that he was actually prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 68 (1984). Whether counsel's performance was deficient is determined by an objective standard of reasonableness. *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999). "[S]crutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690-91; *see also United States v. Jones*, 287 F.3d 325, 331 (5th Cir.) ("Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed."), *cert. denied*, 537 U.S. 1018 (2002); *Lockett v. Anderson*, 230 F.3d 695, 714 (5th Cir. 2000) (*Strickland* requires deference to counsel's "informed strategic choices"). "So long as counsel made an adequate investigation, any strategic decisions made as a result of that investigation

fall within the wide range of objectively reasonable professional assistance." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (internal quotation marks and citation omitted).

To overcome the deference given to informed strategic decisions, a petitioner must show that his counsel "blundered through trial, attempted to put on an unsupported defense, abandoned a trial tactic, failed to pursue a reasonable alternative course, or surrendered his client." *Id.*; *see also Moore v. Johnson*, 194 F.3d 586, 615 (5th Cir. 1999) ("*Strickland* does not require deference to those decisions of counsel that, viewed in light of the facts known at the time of the purported decision, do not serve any conceivable strategic purpose.").

Even if a petitioner establishes that his counsel's performance was deficient, he must also establish that "prejudice caused by the deficiency is such that there is a reasonable probability that the result of the proceedings would have been different." *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997). A petitioner must show that the prejudice made the trial outcome "fundamentally unfair or unreliable." *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364 (1993)).

The state habeas court found that:

> 1. The applicant fails to allege sufficient facts which, if true, would show that he was denied any of his rights or that he was denied the effective assistance of counsel.
>
> 2. In the alternative, the applicant fails to demonstrate that counsels' conduct fell below an objective standard of reasonablenesss and that, but for counsels' alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different had trial counsels conducted more preparation, had more experience, been more diligent, requested different jury instructions, or presented a different defense.

*Ex parte Hutson*, Application No. 56,004-2 at 130-31. Under the AEDPA, this court must defer to the state court's determination that trial counsel rendered effective assistance. *See Ladd v. Cockrell*,

311 F.3d 349, 351 (5th Cir. 2002). Under section 2254(d)(1), "[w]e have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of *Strickland* is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) (quoting *Neal*, 286 F.3d at 236). "The federal-habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state court decision is objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002).

Hutson's claims of ineffective assistance largely arise from counsel's failure to object to purported trial court errors and prosecutorial misconduct. Each claim is examined below.

## A. The Claim that Counsel Failed to Object to the Jury Charge

Hutson asserts that defense counsel should have objected to the jury charge on the ground that it did not contain a self-defense instruction. Hutson argues that Dicks was angry because Hutson had filed a complaint against him with the District Attorney and had knocked off a sign that had been on the office door. Hutson argues that when came to the office to get paid, Dicks punched him and tried to throw him out of the office. Hutson argues that he unavoidably injured Dicks in self-defense. Hutson points out that Dicks was 350 pounds and over six feet tall, while Hutson was fifty-one years old, five feet six inches tall, and 150 pounds.

The state habeas court found that Hutson was not entitled to a self-defense charge. The record supports this conclusion. Hutson did not admit to every element of the assault offense. To be entitled to a self-defense instruction, a defendant must admit to the conduct charged and offer self-defense as justification for that conduct. Hutson never admitted to the elements of the offense.

Any objection that defense counsel might have made that the jury charge lacked a self-defense instruction would have been futile. Counsel cannot be deficient for failing to press a frivolous point. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990); *Green v. Johnson,* 160 F.3d 1029, 1036-37 (5th Cir. 1998), *cert. denied,* 525 U.S. 1174 (1999) (citing *Sones v. Hargett,* 61 F.3d 410, 415 (5th Cir. 1995)). Hutson has failed to show deficient performance on this ground.

### B.     The Claim that Counsel Failed to Investigate or Discover Potentially Exculpatory Evidence

Hutson alleges that counsel was deficient in not investigating the crime scene. He complains that counsel failed to talk to Rendwick Ward and Carmen Hendrex, who were present at the scene, and who would have testified that Dicks was the first aggressor. (Docket Entry No. 53, Petitioner's Response, p. 15).

To establish his failure-to-investigate claim, Hutson must allege with specificity what a proper investigation would have revealed and how it would have benefitted him. *United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000) (citing *United States v. Green,* 882 F.2d 999, 1003 (5th Cir. 1989)). Hutson must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Hutson does not explain how this additional investigation would have changed the outcome. Counsel's cross-examination and closing argument reveal that he was fully aware of the layout of the suite where the fight took place and of the people who witnessed it. Hutson himself states that Rendwick Ward was in the call center when Hutson was collecting his personal items from his desk. Hutson does not claim that Ward witnessed any portion of the physical fight. Nor does Hutson claim that Carmen Hendrex witnessed the fight.

Dicks testified that Hendricks was present somewhere in the suite, but he did not recall her presence during the struggle.

Hutson also argues that these witnesses would have attested that he was not aggressive. At trial, Dicks testified that Hutson was a pleasant and satisfactory employee. Don Black testified that when he heard Hutson say he would collect his money in "f---ing blood," he thought Hutson was joking. The record presents no basis to infer that had counsel investigated further, he would have gained new information that could have changed the outcome of the trial. Hutson has failed to show deficient performance or prejudice.

### C.      The Claim that Counsel Failed to File Pretrial Motions

The record shows that defense counsel filed the following pretrial motions: Motion in Limine Number One, (Clerk's Record, Vol. I, p. 69); Motion for Authorization of Funds for Investigation and for Investigator Fees, (*Id.* at 8); and Rule 404(b), 609 Rules of Evidence and 37.07 and 38.37 Request for Notice of Intent to Offer Extraneous Conduct, (*id.* at 9). Hutson has not identified specific additional pretrial motions that counsel should have filed. Nor does Hutson identify how this alleged failure altered the outcome at trial. Hutson has failed to establish deficient performance or prejudice on this ground.

### D.      The Claim that Counsel Failed to Subpoena Witnesses

During his closing argument, the prosecutor quoted Hutson as saying, "I'm dealing in f---ing blood, not money." Hutson argues that Rendwick Ward would have testified that Hutson never made this statement and that Black – who testified that Hutson did make this statement – had left the office before Dicks returned from lunch.

Decisions on the presentation of evidence and witnesses are essentially strategic. Counsel is entitled to a presumption that his performance was adequate. Complaints of uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy. *Wilkerson v. Cain,* 233 F.3d 886, 892-93 (5th Cir. 2000) (citing *United States v. Cockrell,* 720 F.2d 1423, 1427 (5th Cir. 1983)). There is no basis other than speculation to support Hutson's argument that the outcome of the trial would have been different had counsel offered the testimony of Rendwick Ward. Hutson does not claim that Ward was present during the assault in the hallway or the struggle in the reception area, where Hutson made the statement that Black testified about. The additional evidence Hutson relies upon does not present such uncontradicted or overwhelming support for his account of events as to make it likely that the jury would have reached a different result.

Hutson has failed to establish deficient performance on the part of counsel or resulting prejudice.

### E.    The Claim that Counsel Failed to Examine the Evidence

Hutson complains that defense counsel should have examined evidence but does not identify what evidence counsel should have examined. At trial, the State presented the utility knife Hutson allegedly used to stab Dicks. The State also introduced photographs of the office suite where the fight took place and photographs of Dicks's injuries. Defense counsel vigorously cross-examined the State's witnesses about the location of the knife before and after the assault. Counsel also cross-examined the witnesses about whether they saw Hutson stab Dicks. Dicks admitted that he did not see Hutson stab him with the utility knife, but testified that he felt severe pain right after Hutson struck him. In his closing argument, defense counsel argued that the injuries Dicks suffered could

have been caused by the fight, not the utility knife. Defense counsel was familiar with the evidence the State introduced. Hutson has not shown failure to examine the evidence or any prejudice.

### F.     The Claim that Counsel Failed to Advise Hutson of Affirmative Defenses

Hutson faults defense counsel for failing to advise him of affirmative defenses. Hutson does not identify any affirmative defenses to the aggravated assault charge counsel should have relayed. Hutson has failed to establish deficient performance or prejudice on this ground.

### G.     The Claim that Counsel Failed to Request the Criminal Record of Witnesses

Hutson complains that defense counsel never requested the criminal history for Dicks or other prosecution witnesses. He argues that the evidence of Dicks's criminal record was essential to a self-defense claim. Nothing in the record shows that Dicks or any of the State's witnesses had a criminal history. In *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983), the Fifth Circuit held that conclusory allegations are an inadequate basis for federal habeas relief. "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Id.* Hutson has failed to establish deficient performance or prejudice on this basis.

### H.     The Claim that Counsel Failed to Review the Prosecutor's File

Hutson argues that defense counsel failed to establish that the prosecutor had an open-file policy. Counsel's performance at trial shows that he was familiar with the prosecutor's file. Counsel had reviewed witness statements. Counsel, in his cross-examination, tried to establish that Dicks's testimony at trial was inconsistent with the statement he gave Officer Mungovan. Hutson does not

identify any basis for an inference that there was information in the prosecution file that defense

counsel did not see.  Hutson has failed to show deficient performance or prejudice on this ground.

> **I.     The Claim that Counsel Failed to File Pretrial Motions Concerning Self-Defense**

Hutson argues that Dicks had a reputation for being aggressive and that defense counsel

should have subpoenaed Comvest employees to testify about Dicks's quarrelsome nature.  (Docket

Entry No. 53, Petitioner's Response, p. 12).  There was ample evidence about the events leading up

to the fight.  The record does not support an inference that additional witnesses would have added

new information or changed the outcome.

Nor is there a basis to conclude that counsel was deficient in not filing additional motions

on self-defense.  Hutson was not entitled to a jury instruction on self-defense because he did not

admit to the elements of the offense at trial.  If the evidence at trial had raised this defensive theory,

the trial court would have been required to instruct the jury on self-defense whether defense counsel

had filed a pretrial motion or not.  If counsel had filed such a motion before trial, the court would

have denied it because the need for a jury instruction on self-defense could not be determined before

the evidence.   Any pretrial motion for a jury instruction would have been futile.  The evidence at

trial did not support such a motion because Hutson did not admit to the elements of the offense.

Hutson has failed to establish deficient performance or prejudice on this ground.

> **J.     The Claim that Counsel Failed to File a Motion for Discovery or Motion to Subpoena Witnesses**

Hutson argues that defense counsel should have inspected the box cutter and had it examined

to learn whether it contained Dicks's DNA and whether Hutson's fingerprints were on it.  Hutson

argues that the absence of Dicks's DNA and Hutson's fingerprints on the box cutter would have

established that Hutson did not use it to stab Dicks.  (Docket Entry No. 53, Petitioner's Response, p. 14).

Don Black testified that he saw Hutson pull out a utility knife as he approached Dicks.  Dicks testified that Hutson came up from behind and hit him on the head.  Dicks felt a pain in his neck. Dicks testified that he felt a pain in his side and as he threw Hutson off, he saw the box cutter dropped on the floor.  The State introduced photographs of cuts on Dicks's neck, side, and leg.  The State also introduced the utility knife found at the scene.  Black identified the knife as the one he saw Hutson take from his pocket shortly before the fight.

There was ample physical and eyewitness evidence showing that Hutson used the utility knife to cut Dicks.  Hutson has failed to establish deficient performance on the part of counsel or resulting prejudice.

### K.     The Claim that Counsel Failed to Relay Plea Offers

Hutson argues that defense counsel failed to keep him informed of all plea offers made by the State.  Hutson also argues that counsel tried to force him to accept a fifteen-year sentence. Hutson's own pleadings show that counsel did inform Hutson of the State's plea offer.  Hutson offers no evidence to show that the State made additional offers that counsel did not convey to Hutson. There is no basis to find deficient performance or prejudice on this ground.

### L.     The Claim that Counsel Failed to Present the Results of a Private Investigator's Work

Hutson asserts that counsel did not present the result of a private investigator's work that would have been favorable to Hutson.  Hutson does not describe the results of the private investigator's work.  There is no basis to find that the private investigation results would have had

any impact on the outcome.  Hutson has failed to establish deficient performance or prejudice on this ground.

### M.      The Claim that Counsel Improperly Disclosed Confidential Information to the Prosecutor

Hutson complains that defense counsel disclosed confidential information to help the prosecutor in amending a faulty indictment.  Hutson apparently argues that the charge should have been dismissed due to the defective indictment.

Hutson is apparently referring to an exchange that took place during a pretrial hearing on August 21, 2001.  The exchange was as follows:

> THE COURT:  All right.  And Mr. Denninger, my understanding is, you were waiving notice issues; is that correct?
>
> MR. DENNINGER:  . . .  Just for the record, it has to do with the complainant's name in the indictment.  In one instance, William is referred to as Williams.  It's his first name.  There's an "S" on William.  The State's attorney notified me of this some time last week.  He faxed me a copy of it last week.  And I – we've had discussions today about the fact that it may be immaterial anyway.  I have no problem with it and will be ready to select a jury tomorrow afternoon.
>
> THE COURT:  Then I will sign the Motion For Leave to Amend the Indictment and will amend the indictment.  I see it's only the first paragraph of the indictment that the complainant's name has that extra "S" on it.  And -- all right.

(Reporter's Record, Vol. II, pp. 5-6).

Nothing in the record suggests that counsel disclosed confidential information.  Hutson is apparently arguing that defense counsel should have objected to the amended indictment on the ground that he did not receive proper notice.  Hutson claims that the defense would have been entitled to additional time to prepare for trial.  (*Id.* at 4).  The record does not show either that there

was a basis for such a motion or that additional trial preparation would have altered the outcome. Hutson has failed to establish deficient performance or prejudice.

### N.   The Claim that Counsel Failed to Object to the Use of Peremptory Strikes

Hutson alleges that defense counsel permitted the prosecution to use peremptory strikes to exclude African-Americans from the jury panel.

"The use of peremptory challenges to strike venire-persons based on their race violates the equal protection component of the Due Process clause of the Fifth Amendment." *United States v. Montgomery*, 210 F.3d 446, 453 (5th Cir. 2000). A defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. If that showing is made, the prosecution must offer a race-neutral basis for striking the juror in question. The trial court must then determine whether the defendant has shown purposeful discrimination. *Snyder v. Louisiana*, 552 U.S. 472, 128 S. Ct. 1203 (2008) (quoting *Miller-El v. Dretke*, 545 U.S. 231, 277 (2005) (Thomas, J., dissenting)) (internal quotations omitted).

Counsel did not object to the State's peremptory strikes. Counsel apparently determined that the State did not exclude members of the venire based on race. Nothing in the record supports Hutson's allegation that any particular juror was improperly struck. The record provides no basis for an inference of purposeful discrimination. Hutson's conclusory allegation is not supported by the record.

Hutson has not established constitutionally deficient performance by counsel or actual prejudice as a result. Hutson is not entitled to federal habeas corpus relief on this claim.

### O.     The Claim that Counsel Failed to File a Motion to Suppress

Hutson complains that defense counsel failed to move to suppress the box cutter as evidence. (Docket Entry No. 53, Petitioner's Response, p. 15). At trial, Don Black testified that he saw Hutson pull the utility knife out of his pocket. Dan Nauert saw Hutson strike Dicks from behind. Dicks testified that Hutson struck him on the head and he felt a pain in his neck. He also testified that he felt a pain on his side during the struggle. Dicks had cuts on his neck, side, and leg. The box cutter was recovered at the scene after the fight. Hutson does not set forth the basis on which counsel should have moved to suppress the utility knife. Any such motion would have been futile. Hutson has failed to establish deficient performance or resulting prejudice on this ground.

### P.     The Claim that Counsel Failed to Object to the Sequestration of Witnesses

Hutson claims that the prosecutor secreted favorable witnesses on the day of trial. (Docket Entry No. 13, Petitioner's Memorandum, p. 16). Nothing in the record shows that the prosecutor hid witnesses who would have otherwise provided testimony favorable to Hutson. This claim is entirely conclusory and fails to provide a basis for finding deficient performance or prejudice.

### Q.     The Claim that Counsel Failed to Object to the Use of the Prosecutor's Notes

Hutson alleges that defense counsel failed to object to the prosecutor's use of his own notes to refresh a witness's memory. The record shows that on cross-examination, defense counsel asked Dicks if he reviewed any written statements before testifying. Dicks said that he had reviewed the prosecutor's notes. Defense counsel then moved to have the prosecutor's notes introduced into evidence. The prosecutor responded that he never showed his notes to Dicks. Instead, the prosecutor reviewed the notes from his interview with Dicks and asked Dicks questions. (Reporter's Record, Vol. V, p. 31). The prosecutor argued that the notes were protected as his work product and

inadmissible.  Outside the presence of the jury, the prosecutor asked Dicks about whether he had

seen the prosecutor's notes.  Dicks stated that he never read the notes and that he only answered the

prosecutor's questions after the prosecutor reviewed his own notes.  (*Id*. at 31).  The court overruled

defense counsel's objection to the prosecutor's failure to disclose his notes.  (*Id*. at 34).

> In reviewing this claim of ineffective assistance, the state habeas court found:

>> [T]he applicant fails to demonstrate that counsels' conduct fell below
>> an objective standard of reasonablenesss and that, but for counsels'
>> alleged deficient conduct, there is a reasonable probability that the
>> result of the proceeding would have been different had trial counsel
>> conducted more preparation, had more experience, been more
>> diligent, requested different jury instructions, or presented a different
>> defense.

*Ex parte Hutson*, Application No. 56,004-2 at 130-31.  The state court's factual findings are

presumed correct.  Hutson has failed to rebut this presumption.  28 U.S.C. § 2254(d)(2).  The state

court's decision was a reasonable application of the law to the facts and was not contrary to clearly

established federal law as determined by the Supreme Court of the United States.  Relief cannot be

granted under 28 U.S.C. § 2254(d)(1).

## VIII.   The Claim of Ineffective Assistance of Appellate Counsel

> Hutson complains that appellate counsel – who filed an *Anders* brief – provided ineffective

assistance by failing to raise issues on appeal.  Hutson must show that his attorney's representation

was deficient and caused prejudice.  *See Strickland*, 466 U.S. at 687-88, 692; *Jones v. Jones*, 163

F.3d 285, 300 (5th Cir. 1998).  Effective assistance of appellate counsel does not mean counsel will

raise every available nonfrivolous ground for appeal.  *See Evitts*, 469 U.S. at 394; *West v. Johnson*,

92 F.3d 1385, 1396 (5th Cir. 1996).  Rather, it means, as it does at trial, that counsel performs in a

reasonably effective manner.  *See Evitts*, 469 U.S. at 394.  To show prejudice, Hutson must

demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jones,* 163 F.3d at 302 (quoting *Strickland,* 466 U.S. at 694). Such a reasonable probability makes the proceeding unfair or unreliable, so as to undermine confidence in the outcome. *Green v. Johnson,* 160 F.3d 1029, 1043 (5th Cir. 1998) (citing *Lockhart v. Fretwell,* 506 U.S. 364, 369 (1993)).

In *Anders v. California,* 386 U.S. 738 (1967), the Supreme Court held that if, after a conscientious examination of the record, appointed counsel finds a criminal defendant's case to be wholly frivolous, he should so advise the court and request permission to withdraw. This request must be accompanied by a brief referring to anything in the record that might arguably support the appeal. 386 U.S. at 744. A copy of the brief must be given to the defendant to allow him an opportunity to raise any issues. *Id.* Once an *Anders* brief has been filed, the appellate court examines whether there are nonfrivolous issues for appeal, considering the *Anders* brief with any issues raised by the defendant. *Anders,* 386 U.S. at 744. The Fifth Circuit has routinely allowed indigent defendants to proceed *pro se* after an *Anders* brief has been filed and appointed counsel has been allowed to withdraw. *United States v. Wagner,* 158 F.3d 901 (5th Cir. 1998).

The record shows that the state appellate court granted appellate counsel's motion to withdraw after the *Anders* brief was filed. Hutson filed a *pro se* brief on August 26, 2002, raising fourteen alleged errors. After reviewing the record and briefs, the appellate court found that the appeal was wholly frivolous and without merit. The appellate court found no reversible error in the record and affirmed Hutson's conviction.

There is no showing of either unprofessional errors or resulting prejudice. *Duhamel v. Collins,* 955 F.2d 962, 965 (5th Cir. 1992). Hutson is not entitled to federal habeas corpus relief on this claim.

## IX.    The Claims Based on Trial Court Error

A federal court will grant habeas relief only if the state court's evidentiary rulings are sufficiently egregious as to make the entire trial fundamentally unfair. *Jernigan v. Collins,* 980 F.2d 292, 298 (5th Cir. 1992), *cert. denied,* 508 U.S. 978 (1993). "A state court's evidentiary ruling presents a cognizable habeas claim only if it runs afoul of a specific constitutional right or renders the trial fundamentally unfair." *Cupit v. Whitley,* 28 F.3d 532, 536 (5th Cir. 1994), *cert. denied,* 513 U.S. 1163 (1995). The challenged evidence must be a crucial, critical, or highly significant factor in the context of the entire case. *Jernigan v. Collins,* 980 F.2d at 298; *Bridge v. Lynaugh,* 838 F.2d at 772; *Thomas v. Lynaugh,* 812 F.2d 225, 230 (5th Cir.), *cert. denied,* 484 U.S. 842 (1987). The test for whether an erroneous evidentiary ruling makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted. *See Guidroz v. Lynaugh,* 852 F.2d 832, 835 (5th Cir. 1988); *Rogers v. Lynaugh,* 848 F.2d 606, 609 (5th Cir. 1988).

Each of Hutson's claims of trial-court error is addressed below.

### A.    The Claim of Failure to Instruct the Jury on Self-Defense (Claim A)

Hutson argues that the trial court erred in failing to instruct the jury on self-defense. Hutson argues that Dicks was not injured until he held Hutson in a headlock. Hutson states that he defended himself against an unlawful use of force.

Improper jury instructions in state criminal trials rarely form the basis for federal habeas relief. *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002). "In examining habeas claims of improper jury instructions, the inquiry is not whether there was prejudice to the petitioner, or whether state law was violated, but whether there was prejudice of constitutional magnitude." *Galvan*, 293 F.3d at 764 (internal citation omitted). "[T]he relevant inquiry is whether the failure to give an instruction 'by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.* at 764-65 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). On habeas review, a federal court is barred from reviewing a state-court decision that rests on adequate and independent state grounds. *Dretke v. Haley*, 541 U.S. 386 (2004). When reviewing jury instructions in federal habeas, "[t]he only question . . . is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Hughes v. Johnson*, 191 F.3d 607, 627 (5th Cir. 1999) (quoting *Estelle v. McGuire*, 502 U.S. 62 (1991)).

A trial court must charge the jury fully and affirmatively on the law applicable to every issue raised by the evidence. TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). If evidence, from any source, raises a defensive theory, it must be included in the court's charge. *Ferrel v. State,* 55 S.W.3d 586, 591 (Tex. Crim. App. 2001); *Taylor v. State,* 856 S.W.2d 459, 470-71 (Tex. App.-Houston [1st Dist.] 1993), *aff'd,* 885 S.W.2d 154 (Tex. Crim. App. 1994). However, if the evidence, viewed in the light most favorable to the defendant, does not establish self-defense, the defendant is not entitled to an instruction on the issue. *Ferrel,* 55 S.W.3d at 591. Self-defense is shown when a person is justified in using force against another when the actor reasonably believes the force is necessary to protect oneself against another's use or attempted use of unlawful force. TEX. PENAL

CODE ANN. § 9.31(a) (Vernon Supp. 2009).  The use of force is not justified in response to verbal provocation alone. TEX. PENAL CODE ANN. § 9.31(b)(1) (Vernon Supp. 2009).

To be entitled to an instruction on self-defense, an accused must admit the conduct charged in the indictment and then offer self-defense evidence as justification for that conduct. *Jackson v. State,* 110 S.W.3d 626, 631 (Tex. App. - Houston [14th Dist.] 2003, pet. ref'd); *see Shaw v. State,* 243 S.W.3d 647, 659 (Tex. Crim. App. 2007), *cert. denied,* --- U.S. ----, 128 S. Ct. 2486 (2008) (holding defensive instruction only appropriate when defendant essentially admits to every element of the offense including the culpable mental state, but imposes justification to excuse the otherwise criminal conduct).  The standard is whether a defendant "essentially admits" the elements of an offense.  Hutson did not essentially admit the elements of the offense.

Hutson was charged with aggravated assault.  Hutson has not pointed to testimony or evidence showing that he essentially admitted the charged conduct.  Hutson argues in his pleadings before this court that he reacted to being held in a headlock.  Regardless of his present assertions, Hutson never admitted to the elements of the offense at trial.  Hutson fails to show that self-defense applied in his case or that he was entitled to a jury instruction on that issue, as he claims.  Hutson raised this issue on appeal.  The appellate court rejected the claim and the Texas Court of Criminal Appeals refused a petition for discretionary review.  Based on its independent review of the trial record, this court concludes that a rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt.  In Texas, "a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a).  Hutson took the stand on his own behalf but he never testified that he was in fear or that

he reasonably believed that his conduct was immediately necessary to protect himself. Hutson's allegations, and testimony of the State's witnesses, do not demonstrate that self-defense was justified under the circumstances. Because Hutson fails to show that his conviction was supported by insufficient evidence in violation of the *Jackson v. Virginia* standard, he is not entitled to relief on this issue. Because the evidence at trial did not raise the issue of self-defense, the trial court did not err by refusing Hutson's request for a jury instruction on the matter.

Because Hutson fails to demonstrate that he had a viable claim of self-defense, he fails to show that he was entitled to a jury instruction on that issue. The state courts' rejection of Hutson's jury-charge claim is not contrary to or an unreasonable application of clearly established federal law. Nor is it based on an unreasonable determination of the facts in light of the evidence. Hutson is not entitled to federal habeas corpus relief on this claim.

### B.    The Claim of Failure to Dismiss Court-Appointed Counsel (Claims B-E)

Hutson argues that the trial court erred in failing to dismiss his court-appointed attorney. Hutson argues that counsel was under investigation by the State Bar because Hutson had filed a complaint against him. Nothing in the record shows that Hutson ever complained that he and his counsel had a conflict of interest. Before trial, Hutson told the court that he did not think counsel was ready to go to trial. Hutson did not mention that he had filed a complaint against counsel. Hutson attached copies of letters he received from the State Bar of Texas Office of the Chief Disciplinary Counsel. (Pro se Appellate Brief filed on September 26, 2002 in the Fourteenth Court of Appeals, pp. 15-17). The letter advised Hutson that his grievance had been dismissed on September 5, 2001. Hutson did not advise the trial court of any conflict of interest.

Hutson also argues that the trial court's failure to dismiss his court-appointed counsel was erroneous. Hutson asserts that there was a breakdown in communication and that counsel was operating under a conflict of interest. Hutson filed two motions to dismiss counsel in the trial court. As noted, the trial court denied Hutson's request for hybrid representation. (Reporter's Record, Vol. II, pp. 9-10). For this reason, the trial court did not address Hutson's many *pro se* motions. This court has previously considered and rejected Hutson's claim that he was denied the right to self-representation and Hutson's claim of trial court error based on the denial of hybrid representation.

### C.   The Claim of the Failure to Test the Alleged Weapon for Fingerprints, Blood, and DNA (Claims F & J)

As discussed in the context of Hutson's ineffective assistance claim, the failure to request DNA or fingerprint testing of the utility knife was not deficient or prejudicial. The State presented the testimony of eyewitnesses and of the victim of the assault. The State also introduced photographs of the cuts the victim sustained in the fight.

Following his conviction, Hutson filed a motion for postconviction forensic testing under Chapter 64 of the Texas Code of Criminal Procedure, seeking DNA testing of the box cutter allegedly used to commit the aggravated assault. On April 12, 2004, the trial court held a postconviction DNA hearing and denied Hutson's motion for DNA testing. The trial court adopted the State's proposed findings of fact and conclusions of law, finding, in part, that appellant failed to show that evidence still existed and was in a condition making DNA testing possible. On review, the appellate court stated:

> Before granting post-conviction DNA testing, the trial court must first determine whether (a) testable biological material exists in a condition making forensic DNA testing possible and has not been altered or tampered with in any material respect, and (b) identity was

or is an issue in the case.   Tex. Code Crim. Proc. Ann. art. 64.03(a)(1)(A) & (B).   In this case, the State submitted affidavits from relevant authorities averring that the Harris County Clerk's Office, the Houston Police Department crime lab, the Houston Police Department property room, and the Harris County Sheriff's Office property room do not have custody of any property or evidence related to appellant's case.   Moreover, appellant introduced no evidence to show that testable DNA evidence exists.

After reviewing the evidence submitted at the post-conviction DNA hearing, we find that the record supports the trial court's determination that no evidence containing biological material capable of DNA testing exists.   Deferring to the trial court's finding that this evidence does not exist, we hold that the trial court properly denied appellant's motion for post-conviction DNA testing. *See Lopez v. State,* 114 S.W.3d 711, 717 (Tex. App.-Corpus Christi 2003, no pet.) (holding that convicting court properly denied appellant's motion for post-conviction DNA testing because record supported finding that no evidence containing biological material capable of DNA testing existed).

*Hutson v. State,* No. 14-04-00414-CR, 2005 WL 975700 (Tex. App. -- Houston [14th Dist.] 2005,

pet. ref'd) (not designated for publication).   Hutson is not entitled to federal habeas corpus relief on

this claim.

### D.      The Claim of the Failure to Excuse the Jury (Claim G)

Hutson complains that the trial court erred in failing to excuse the jury while the prosecutor

and defense counsel argued about the admissibility of evidence.   The trial judge ruled that a portion

of the police report was admissible, including a statement by Dicks to the police.   Even if the trial

court erred in not excusing the jury, Hutson has not shown that this error played a "crucial, critical,

and highly significant" role in the jury's determination.   There is no basis for habeas relief on this

ground.

### E.     The Claim of the Limit on Cross-Examination (Claim H)

In cross-examining Dicks, defense counsel asked about the corporate structure of Comvest Financial; the reasons one of the clients abruptly stopped doing business with Comvest; why Dicks continued to employ Nauert and laid off the remaining employees; the corporate history of Comvest; and whether Dicks operated another business in the same suite. The prosecutor objected based on relevance, and the court sustained the objection. In cross-examining Nauert, defense counsel asked why he was the only person still employed by Comvest.

Even if the trial court erred in sustaining the prosecutor's objections, Hutson has not shown that this error played a "crucial, critical, and highly significant" role in the jury's determination. There is no basis for habeas relief on this ground.

### F.     The Claim of Error in the Denial of Self-Representation on Appeal (Claim I)

Hutson complains that the trial court erred in denying the appointment of counsel for forensic testing of evidence and by appointing counsel for appeal against Hutson's wishes. This court has previously determined that the trial court properly denied Hutson's request for hybrid representation and that Hutson abandoned his request to proceed *pro se* on appeal. This claim lacks merit.

### G.     The Claim of Error in the Denial of a Continuance (Claim K)

Hutson alleges that the trial court erred in denying his motion for continuance so that the defense could subpoena favorable witnesses. As discussed previously, Hutson apparently wanted to subpoena Rendwick Ward. But Hutson does not assert that Ward witnessed the physical fight between Hutson and Dicks.

There was no error in denying a continuance. Nor is there any basis to find prejudice as a result.

Hutson has failed to show that any of the trial court's errors rendered his trial fundamentally unfair or that there was a reasonable probability that the verdict would have been different had the trial been conducted properly. Any such error was harmless under *Brecht v. Abrahamson,* 507 U.S. at 623 (federal habeas relief requires a showing that a constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict."). There was overwhelming evidence against Hutson. Hutson has failed to show that the state court's decision rejecting the claims of trial-court error were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## X.     The Claim Based on an Improper Enhancement

Hutson argues that the issue of whether he used a deadly weapon should have been submitted to a jury. (Docket Entry No. 53, Petitioner's Response, p. 20). Hutson argues that the affirmative finding of a deadly weapon used to enhance his sentence was made by a judge, not a jury, in violation of *Ring v. Arizona,* 536 U.S. 584 (2002), and *Apprendi v. New Jersey,* 530 U.S. 466 (2000). *Ring* and *Apprendi* hold that facts used to increase punishment beyond the statutory maximum must be alleged by the State and found by the jury beyond a reasonable doubt. *Ring,* 536 U.S. 584, 609 (declaring unconstitutional an Arizona law that enhanced life imprisonment to death sentence on certain findings made by a judge); *Apprendi,* 530 U.S. 466, 490-92 (declaring unconstitutional a New Jersey law that enhanced punishment on judge-made findings).

Hutson's counsel filed a motion for the judge to assess punishment on September 25, 2001. (Clerk's Record, Vol. I, p. 77). Hutson waived his right to a jury trial on the punishment phase. The court became the fact-finder and could make the deadly weapon finding without violating *Apprendi.*

Alternatively, *Ring* and *Apprendi* do not make the result here improper.  The indictment and the court's jury instructions set out the essential elements of aggravated assault.  *See* Tex. Penal Code Ann. § 22.02 (Vernon 2000).  The jury found those elements beyond a reasonable doubt. Aggravated assault is a felony of the second degree.  The punishment range is between two and twenty years. Tex. Penal Code Ann. §§ 12.33, 22.02 (Vernon 2000).  Hutson was sentenced to ten years, well within the statutory range.  *Id.* § 12.33.  Hutson's punishment did not exceed the maximum.

Hutson is not entitled to federal habeas corpus relief on this claim.

## XI.     The Request for an Evidentiary Hearing

Hutson requests an evidentiary hearing. (Docket Entry No. 53, Petitioner's Response, p. 22).

Section 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
>
> (A)  the claim relies on–
>
> (i)  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Id.*

A petitioner is not entitled to an evidentiary hearing "if his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." *Young v. Herring*, 938 F.2d 543, 559 (5th Cir. 1991). "If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require." Rule 8 of the Rules Governing Section 2254 Cases.

This court has been able to resolve all the issues raised in this case based on the pleadings and state-court records. Hutson has failed to provide a factual basis for granting an evidentiary hearing. An evidentiary hearing is not required because there are no relevant factual disputes that would require development to resolve the claims. *Robinson v. Johnson*, 151 F.3d 256, 268 (5th Cir. 1998), *cert. denied*, 526 U.S. 1100 (1999). Hutson's request for an evidentiary hearing, (Docket Entry No. 53), is denied.

## XII.   Conclusion

The respondent's Motion for Summary Judgment, (Docket Entry No. 52), is granted. Hutson's petition for a writ of habeas corpus is denied. Hutson's motion for declaratory judgment, (Docket Entry No. 55), and motion to proceed *in forma pauperis*, (Docket Entry No. 57), are denied as moot. Any remaining pending motions are denied as moot.

Under the AEDPA, a petitioner must obtain a certificate of appealability before appealing the district court's denial of habeas relief. 28 U.S.C. § 2253(c)(2). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322 (2003) (citing 28 U.S.C. § 2253(c)(1)). "The COA statute establishes procedural rules and requires a threshold inquiry into whether the circuit court may entertain an

appeal." *Id.* (citing *Slack v. McDaniel*, 529 U.S. 473, 482 (2000); *Hohn v. United States*, 524 U.S. 236, 248 (1998)).  A COA will be granted only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, a petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (citation and internal quotation marks omitted).  Any doubt about whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination. *Fuller v. Johnson*, 114 F.3d 491, 495 (5th Cir. 1997).

The analysis "requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El*, 123 S. Ct. at 1039.  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." *Id.*  Rather, "'[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Id.* at 1040 (citing *Slack v. McDaniel*, 529 U.S. 473, 484).

Hutson has not made "a substantial showing of the denial of a constitutional right."  A certificate of appealability will not issue.

SIGNED on January 21, 2010, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge